UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EMPIRE LUMBER CO., a Washington corporation, d/b/a KAMIAH MILLS, ) ) | Case No. 3:10-CV-00533-REB |
| Plaintiff, ) ) ) | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. ) ) | **DEFENDANTS' MOTION FOR** |
| INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, an Indiana corporation and a division of the ILM Group, THE ILM GROUP, and JOHN DOES I to V, ) ) ) ) | **PROTECTIVE ORDER RE: DEPOSITION OF JOHN WOLF** **(Docket No. 74)** |
| Defendants. ) ) ) | |

Currently pending before the Court is Defendants' Motion for Protective Order Re: Deposition of John Wolf (Docket No. 74). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

Plaintiff Empire Lumber Co. ("Empire Lumber") wants to depose John Wolf, Defendant Indiana Lumbermens Mutual Insurance Company's ("ILM") Chief Executive Officer. Relying upon the "apex doctrine," Defendant opposes such efforts, arguing that (1) Mr. Wolf has no personal knowledge of the facts or issues involved in this action, (2) the only individuals within ILM with personal knowledge concerning Empire Lumber's claim – Randy Thompson and Ray Campisi – have already been deposed, and (3) Empire Lumber has neither requested nor taken an FRCP 30(b)(6) deposition concerning the topics on which Empire Lumber wishes to depose Mr. Wolf. Accordingly, ILM seeks a protective order, disallowing Mr. Wolf's deposition.

**MEMORANDUM DECISION AND ORDER - 1**

After considering the parties' briefing and argument, the Discovery Master, the Honorable George Reinhardt, recommended to the Court that ILM's Motion for Protective Order be denied, finding that "it is reasonable to believe that Mr. Wolf has unique personal knowledge of matters in issue which, as a practical matter, may only be ascertainable through the taking of his deposition, as opposed to other methods of discovery."  *See* Discovery Master Rpt., p. 2 (Docket No. 100).  ILM now objects to the Discovery Master's recommendation, requesting that it be reversed and that ILM's Motion for Protective Order be granted.  The standard of review is *de novo*.  *See* Fed. R. Civ. P. 53(f); *see also* 11/16/11 Order Appointing Discovery Master, p. 2 (Docket No. 40).

## II. DISCUSSION

**A.     Standards of Law: Protective Orders and the Apex Doctrine**

Federal courts are given broad discretion in supervising the pretrial phase of litigation.  *See Zivkovic v. S. Cal. Edison Co.*, 302, F.3d 1080, 1087 (9th Cir. 2002).  Additionally, "[u]pon motion by a party . . . from whom discovery is sought," the Court is authorized to make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  "The Supreme Court has interpreted this language as conferring 'broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'" *Phillips ex. rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).  A protective order may issue, however, only "for good cause shown."  Fed. R. Civ. P. 26(c).

"A party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied."  *Groupion, LLC v. Groupon,* Inc., 2012 WL 359699, *2 (N.D. Cal. 2012) (citing Affinity *Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, *15 (N.D. Cal. 2011) (citation omitted)).  Absent extraordinary circumstances, it is very unusual for a court to prohibit the

**MEMORANDUM DECISION AND ORDER - 2**

taking of a deposition.  *Id*. (citation omitted).  However, "[w]hen a party seeks the deposition of a high-level executive (an "apex" deposition), the court may exercise its discretion under the federal rules to limit discovery" – the so-called apex doctrine.  *Id*. (citations omitted).  "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case, and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods."  *Id*. (citations omitted).  A claimed lack of knowledge, by itself, is insufficient to preclude a deposition.  *Id*. (citations omitted).  "Moreover, the fact that the apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery."  *Id*. (citations omitted).  Additionally, "when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition."  *Id*. (citation omitted).

**B.     Analysis**

As justification for Mr. Wolf's deposition, Empire Lumber notes that: (1) in November 2008, Randy Thompson (ILM's Property Claims Specialist) stated that Mr. Wolf instructed him to prepare the "initial reinsurance report"; (2) Ray Campisi (ILM's Vice President of Claims) testified at his deposition that he "report[ed]" to Mr. Wolf; and (3) Don Blackwell (ILM's Secretary and Treasurer) testified at his deposition that "Mr. Campisi would periodically inform Mr. Wolf and myself, usually in a joint setting, as to how much the total estimated loss was and what, if anything, was being done currently to further work on and quantify the loss."  *See* Pl.'s Resp. to Mot. for Prot. Order, pp. 2-3 (Docket No. 79).

ILM does not dispute the above references to the record.  Instead, ILM argues that these instances (either singularly or taken in combination) do not warrant Mr. Wolf's deposition – what amounts to an apex deposition.  Specifically, in response to Empire Lumber's positions, ILM counters that:  (1) Mr. Thompson was never asked about Mr. Wolf at his deposition and, therefore, any reference to Mr. Wolf during that deposition is *de minimis* as it represents a single

**MEMORANDUM DECISION AND ORDER - 3**

log entry over the course of two years; and (2) a hierarchy with respect to which employee "reports to" whom, without more, does not establish the requisite knowledge in the "reportee" to warrant that individual's deposition over another, more well-informed, individual/deponent. *See* Def.'s Reply in Supp. of Mot. for Prot. Order, pp. 2-5 (Docket No. 82). Moreover, ILM insists that, because Empire Lumber has neither requested nor taken an FRCP 30(b)(6) deposition of ILM, Empire Lumber should not be permitted to take Mr. Wolf's deposition. *See id*. at p. 2. Thus, in a nutshell, ILM contends that, not only does Mr. Wolf have no personal knowledge speaking to the facts or issues involved here, even if he did, other discovery methods exist for Empire Lumber to resolve any questions it may have.

While persuasive in theory, ILM's arguments seem to miss the overall point. This is not a question where certain individuals with relevant information have not been deposed. To be sure, ILM recognizes that those individuals within ILM with personal knowledge – Messrs. Campisi, Thompson, and, to some extent, Blackwell – have already sat for their deposition. While, during these depositions, counsel for Empire Lumber could have been more thorough concerning Mr. Wolf's involvement, if any, in the circumstances leading up to this litigation, any failure in this respect does not preclude Mr. Wolf's separate deposition. Indeed, as the Discovery Master found, discovery (including depositions taken thus far) has indicated that Mr. Wolf instructed Mr. Campisi to prepare the initial reinsurance report and that Mr. Campisi would occasionally meet with Mr. Wolf to discuss the loss and to quantify losses. *See* Discovery Master Rpt., p. 2 (Docket No. 100). Given the enormity of the loss involved in the Empire Lumber fire, it is not surprising that Mr. Wolf might well be involved in following how the loss claim was being handled.

Again, Mr. Campisi has already been deposed. Arguably then, Empire Lumber's next step is to follow up with Mr. Wolf to probe his recollection as to what others have already testified about, including his own personal involvement. An FRCP 30(b)(6) deposition cannot

**MEMORANDUM DECISION AND ORDER - 4**

address such areas because Empire Lumber would not be seeking information about an organizational policy or practice but, rather, matters particular to Mr. Wolf that only he can address.

For these reasons, ILM's Motion for Protective Order will be denied. Still, the Court agrees with the Discovery Master that the apex doctrine-related considerations should guide the coordination of Mr. Wolf's deposition, in particular (1) that the deposition be taken at a time mutually convenient to all counsel and Mr. Wolf; (2) that the deposition be taken at a location determined by ILM's counsel so as to cause the least amount of company operational inconvenience to Mr. Wolf, and (3) that Empire Lumber's counsel may choose (but is not required) to depose Mr. Wolf telephonically. *See id*. at pp. 2-3. Additionally, because Mr. Wolf's anticipated testimony is potentially predictable in light of his recently-filed affidavit (coupled with the arguments raised within ILM's Motion for Protective Order), Empire Lumber's counsel may choose (but is not required) to take Mr. Wolf's deposition by written questions, pursuant to FRCP 31.

### III.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED THAT Defendants' Motion for Protective Order Re: Deposition of John Wolf (Docket No. 74) is DENIED.

DATED:  **December 12, 2012**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 5**